OPINION
Appellants/cross-appellees, Marion L. Carlin ("Marion"), Elizabeth Waylen ("Elizabeth"), Joan McCarthy ("Joan"), Catherine Burkey ("Catherine"), Mary Ellen Comella ("Mary Ellen"), and Teresa Carlin ("Teresa"), appeal the judgment entry of the Lake County Court of Common Pleas granting summary judgment in favor of appellee/cross-appellant, Barry M. Byron, as administrator WWA of the estate of Frank Veroni ("Veroni") and as trustee of the Veroni Trust No. III ("Trust No. III"), an inter vivos trust that was executed on October 10, 1986.[1]
On November 10, 1999, appellee filed a declaratory judgment action against appellants, Clarence C. Carlin ("Clarence") and William A. Carlin ("William"), seeking to set aside a $250,000 bequest to Veroni Trust No. II ("Trust No. II"), an inter vivos trust which was created on June 30, 1989. Appellee was appointed the successor trustee and administrator of Trust No. III after Clarence and William were removed as co-trustees.
On December 17, 1999, appellants filed an answer and counterclaim for declaratory judgment. On that same date, appellants filed a motion to dismiss Count II of appellee's complaint for declaratory judgment.[2]
Appellee filed an answer to the counterclaim and a memorandum in opposition to the motion to dismiss on January 28, 2000. On March 9, 2000, the trial court denied appellants' motion to dismiss and explained that:
 "[w]hat is at issue in this case * * * is whether the presumption of invalidity that attaches to a bequest made to an attorney — beneficiary who also witnesses a will likewise attaches to a bequest made to a nonwitnessing beneficiary who is related to the witnessing attorney by affinity or consanguinity. Thus, to the extent that [appellee] seeks a declaration that the bequest is invalid on this basis, the complaint states a claim for which relief could be granted."
 On June 12, 2000, appellee filed a motion for summary judgment. Appellants filed a cross-motion for summary judgment on July 12, 2000. In a September 11, 2000 entry, the trial court granted appellee's motion for summary judgment to the extent that "the bequest to [Trust No. II] was invalid due to the presumption of undue influence that arises when an attorney drafts a will that benefits the attorney or the attorney's immediate family." However, the court denied appellee's motion for summary judgment "as to the applicability of R.C. 2107.15 to the facts of this case and to the lack of authority to fund [Trust No. II,]" which has to do with a bequest being held void where it is made to a someone who is one of the two witnesses to a will. In that entry, the trial court also denied appellants' summary judgment motion.
The facts pertaining to this appeal are as follows. Veroni died on March 31, 1996, and his last will and testament (the "will") dated March 13, 1996, was admitted to probate court. Questions arose concerning the propriety of payments for executor commissions to Clarence and William, who were the attorneys that drafted the will and the only witnesses to the will. Clarence and William were executors of the Veroni estate and transferred $250,000 to Trust No. II, which they controlled for their family's benefit.[3]
The trial court ordered that the funds be transferred back from Trust No. II to Trust No. III. This court held that the $250,000 bequest made to the Trust No. II was void to the extent that Clarence and William took under the 1996 will since they were the only witnesses to that will. Inre: Estate of Veroni (Dec. 13, 1998), Lake App. No. 97-L-119, unreported, 1998 WL 964583, at 3 ("Veroni I"). In Veroni I, we reversed and remanded the matter to the trial court so that a hearing could be held at which appellants could have an opportunity to be heard.[4] Id. at 6. However, in In re: Estate of Veroni (Dec. 31, 1998), Lake App. No. 98-L-024, unreported, 1998 WL 964527, at 5, ("Veroni II"), we held that the transfer of $250,000 from Trust No. III to Trust No. II was improper, unauthorized, and fraudulent.
Appellants timely filed the instant appeal and now assert the following as error:
 "[1.] The trial court erred in denying [appellants'] motion to dismiss Count II and motion for summary judgment.
 "[2.] The trial court erred in granting [appellee's] motion for summary judgment."
 In turn, appellee timely filed a notice of cross-appeal and raises one assignment of error alleging that the bequest to Trust No. II was void because of the undue influence exerted by Clarence and William over Veroni.[5]
For organizational purposes, we will address appellants' second assignment of error first. In that assignment of error, appellants contend that the trial court erred in granting appellee's motion for summary judgment.
Prior to granting a motion for summary judgment, a trial court must determine that "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." Mootispaw v. Eckstein
(1996), 76 Ohio St.3d 383, 385. On appeal, the trial court's granting of summary judgment is reviewed de novo. Monrean v. Higbee Dept. Stores,Inc. (Dec. 29, 2000), Trumbull App. No. 99-T-0099, unreported, 2001 WL 20808, at 5.
First, we must note that the Supreme Court of Ohio has stated that "[a] presumption of undue influence, rebuttable by a preponderance of the evidence, arises when (i) the relationship of attorney and client exists between a testator and an attorney, (ii) the attorney is named as a beneficiary in the will, (iii) the attorney/beneficiary is not related by blood or marriage to the testator, and (iv) the attorney/beneficiary actively participates in the preparation of the will." Krischbaum v.Dillon (1991), 58 Ohio St.3d 58, paragraph one of the syllabus.
The elements of undue influence are as follows: (1) a susceptible party; (2) another's opportunity to exert influence; (3) the fact of improper influence exerted or attempted; and (4) the result showing the improper influence. Id. at 65. It is our view that based on the record before us, appellee has not provided the Civ.R. 56 items to establish the elements of undue influence.
Unlike the attorney in Krischbaum, appellants, in the present appeal, had no role in the actual drafting of the will. Therefore, appellants argue that the rule of law as stated in Krischbaum is inapposite to this case. However, the Supreme Court has extended Krischbaum to also apply to the beneficiaries of the attorneys via the Disciplinary Rule, DR 5-101(A)(2), which prohibits a lawyer from drafting a will for a client of the lawyer, in which the lawyer's spouse and/or the lawyer's children are named as beneficiaries. Specifically, DR 5-101(A)(2) states that:
 "Notwithstanding the consent of the client, a lawyer shall not knowingly prepare, draft, or supervise the preparation or execution of a will, codicil, or inter vivos trust for a client in which any of the following are named as beneficiary:
"(a) the lawyer;
"* * *;
 "(e) the spouses, siblings, natural or adoptive children, or natural or adoptive parents of any of those described in divisions (A)(2)(a) through (d) of this rule."
 In the instant matter, although appellants did not participate in drafting the will and trust of Veroni, appellants, who are the wife and children of Clarence and the mother and sisters of William, benefited from those documents. This court concludes that it is logical that a presumption of undue influence arises when an attorney's spouse and children or an attorney's mother and sisters are beneficiaries under a testator's will which was drafted by the attorney pursuant to DR 5-101(A). It is our view that such a bequest is highly suspect because it also provides the drafting attorney the opportunity to significantly benefit indirectly, if not directly, in an inappropriate vicarious direct manner.
Furthermore, in Disciplinary Counsel v. Slavens (1992),63 Ohio St.3d 162, 163, the Supreme Court of Ohio, indefinitely suspended an attorney. In Slavens, the respondent's father had prepared several wills for the testator, but none of those wills provided any bequests to members of the respondent's family. In 1984, when the testator was diagnosed with senility and an organic brain disorder, the respondent arranged for the testator to execute a new will under which the respondent's three children would receive $5,000 in bequests, and the respondent would receive thirty-five percent of the testator's estate. The respondent stipulated that he violated DR 5-101(A) and DR 1-102(A)(1) and (6). In addition to the stipulated violations, it was determined that the respondent had also violated DR 1-102(A)(4).
We are aware that the facts in Slaven differ from those in the case at hand because in Slaven, the decedent was diagnosed with senility and a brain disorder whereas here, it was determined that Veroni was sane and competent. Nonetheless, in both cases, the attorneys acted in a manner that benefited their family by drafting documents with bequests to their immediate family members in violation of DR 5-101(A). See, also, ToledoBar Assn. v. Sheehy (1995), 73 Ohio St.3d 208.
We are also mindful that disciplinary rules are not controlling authority regarding legal issues involved in litigated cases. On the other hand, we cannot say under the circumstances of this case that the amendment of DR 5-101(A) should not be a triggering agent for a revisitation of Krischbaum for a determination as to whether its rationale should be expanded to apply to the facts of this case.
In the case at bar, it our view that Clarence and William would indirectly, if not directly, benefit from the bequest to appellants, and there was no evidence to rebut the presumption of undue influence. Hence, since there are no genuine issues of material fact, the trial court did not err in granting appellee's motion for summary judgment. Appellants' second assignment of error is not well-founded.
In appellants' first assignment of error, they argue that the trial court erred in denying their motion to dismiss and motion for summary judgment. However, after reviewing the record before us, it is our determination that appellee's complaint stated a claim for which relief could be granted. Thus, summary judgment would have been inappropriate.
Moreover, appellants claim that the exclusive method of challenging a will alleged to be invalid on the ground of undue influence is through a will contest action brought pursuant to R.C. 2107.71. The doctrine of the "law of the case" provides that "[a]bsent extraordinary circumstances, such as an intervening decision by the Supreme Court, an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case." Nolan v. Nolan (1984),11 Ohio St.3d 1, syllabus.
In Nolan, the Supreme Court of Ohio described the law of the case doctrine as follows:
 "Briefly, the doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels. * * *
 "* * * [T]he rule is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution. * * *
 "In pursuit of these goals, the doctrine functions to compel trial courts to follow the mandates of reviewing courts. * * * Thus, where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law." (Citations omitted.) Id. at 3.
 The Supreme Court of Ohio has noted that "* * * `the rule is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution.'" Hubbard ex rel. Creed v. Sauline
(1996), 74 Ohio St.3d 402, 404. Further, the Supreme Court has held that "the doctrine of law of the case precludes a litigant from attempting to rely on arguments at a retrial which were fully pursued, or available to be pursued, in a first appeal." Id. at 404-405.
In the instant case, the law of the case doctrine requires this court to follow its previous determination that Trust II was void and that the will was deficient because Clarence and William could not be beneficiaries. Therefore, we conclude that under the law of the case that the transfer to Trust II was also void. Appellants' first assignment of error lacks merit.
Turning to appellee's cross-assignment, he alleges that Trust No. II was void because of the operation of R.C. 2107.15. Appellee also suggests that the executor did not have the authority to fund Trust No. II.
In Veroni I, the matter was remanded to the trial court so that a hearing could be held at which appellants could have an opportunity to be heard. Specifically, this court stated that "because the other beneficiaries [appellants] did not have notice and an opportunity to be heard regarding the elimination of their contingent interest in Trust No. II, this matter must be remanded so that they may receive notice and an opportunity to be heard at a hearing at which the issue shall be whether their interests in Trust No. II are rendered void pursuant to R.C. 2107.15." Veroni, supra, at 5. However, we are unaware of what took place at the hearing pursuant to our remand in Veroni I.
We further note that because of the absence from the appellate record of a transcript from that hearing, an appellate court is restricted to explore only those matters which are contained in the record before it.Ostrander v. Parker-Fallis Insulation Co. (1972), 29 Ohio St.2d 72, 74. App.R. 9 requires the party challenging the trial court's decision, in this case appellee, to demonstrate an alleged error through references to the record. Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197,199. Accordingly, without a transcript of the hearing or some other acceptable alternative as set out in App.R. 9, a reviewing court must presume the regularity of the trial court proceedings, as well as the validity of its judgment. Tonkinson v. Tonkinson (Nov. 3, 1995), Trumbull App. No. 95-T-5235, unreported, 1995 WL 803584, at 1.
Here, since appellee has failed to present a transcript from the hearing or a suitable alternative with which to demonstrate the issue of whether appellants' interests in Trust No. II were void, this court presumes regularity in the trial court's proceedings in Veroni I. Accordingly, appellee's cross-assignment of error is overruled.
For the foregoing reasons, appellants' assignments of error and appellee's cross-assignment of error lack merit. The judgment of the Lake County Court of Common Pleas, Probate Division, is affirmed.
JUDGE DONALD R. FORD, O'NEILL, P.J., GRENDELL, J., concur.
[1] For purposes of this opinion, we will refer to appellants/cross-appellees as appellants and appellee/cross-appellant as appellee.
[2] Appellants apparently argued that Count II of appellee's complaint, which sought to invalidate the bequest to appellants on the basis of undue influence, was an untimely attempt to contest Veroni's will.
[3] Trust No. II provided that after the death of Veroni, the income of the trust was payable to Clarence and his wife, Marion. Upon their death, any remaining principal was to be distributed to Clarence and Marion's lineal descendants, which included William, Elizabeth, Joan, Catherine, Mary Ellen, and Teresa.
[4] The record presently before us begins with appellee's complaint filed on November 10, 1999. As a result, we do not know what took place when we ordered that the matter be remanded in our opinion, Veroni I, dated December 13, 1998.
[5] Although appellee filed a notice of cross-appeal, in his brief he labeled it as a cross-assignment. However, it is more properly a cross-assignment of error because it is an additional reason to consider the bequest to Trust II void.