JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-Appellant Robert Chambers ("Plaintiff") appeals from the order of the trial court which entered summary judgment for Defendants-Appellants Melling, Harding, Schuman Montello, L.P.A., Inc., Martin Powers and Blair Melling ("Defendants") on the basis that Plaintiff did not commence his action for legal malpractice within the limitations period set forth in R.C. 2305.11. Additionally, Plaintiff appeals from the orders of the trial court granting a Protective Order to Third-Party Jacqueline Chambers and denying Plaintiff's Motion to Compel Discovery. For the reasons set forth below, we affirm the order granting summary judgment to Defendants and reject Plaintiff's other assignments of error as moot.
 {¶ 2} On June 5, 2003, Plaintiff filed a complaint for legal malpractice against Defendants in which he asserted that Blair Melling and Martin Powers committed legal malpractice during the course of their representation of the Plaintiff in the legal separation action filed against him. Defendants filed a motion for summary judgment contending that Plaintiff failed to commence his action within the applicable statute of limitations.
 {¶ 3} The undisputed facts are that on February 29, 2000, Plaintiff first met with Defendant, Martin Powers, and retained Mr. Power's services for representation of the Plaintiff in a legal separation matter filed by his wife in Cuyahoga County Domestic Relations Court. Defendant, Martin Powers, then left the firm of Melling, Harding, Schuman Montello, L.P.A., Inc. and the Plaintiff's case was reassigned to Blair Melling. On April 17, 2002, the Plaintiff and his spouse reached an in-court legal separation agreement in the settlement of all issues.
 {¶ 4} During the last week of May of 2002, Plaintiff consulted Steven Slive, an attorney who had represented the Plaintiff in two previous domestic relations proceedings. Plaintiff testified that, during this consultation, he asked Mr. Slive to review his case because he was, as he expressed to Mr. Slive, "greatly dissatisfied with the outcome."
 {¶ 5} On June 2, 2002 and after meeting with Mr. Slive, Plaintiff composed a letter to Defendants terminating their representation. In this letter, Plaintiff reiterated his dissatisfaction with his representation and stated: "I have had a great deal of time to think about the outcome of my case, and frankly I am dissatisfied beyond description. I sought a second opinion from another attorney, because both you and I know that the judgment handed down against me was totally unfair and never should have come to the conclusion it did. Therefore, I am terminating our relationship and asking you to make my files, court documents, subpoena and court records available to me by Wednesday June 5, 2002."
 {¶ 6} On June 3rd or 4th, Plaintiff personally delivered the termination letter to Defendant's office. On June 5, 2002, Plaintiff retrieved his file from Defendant's office.
 {¶ 7} The trial court entered summary judgment for Defendants, finding that the statute of limitations began running on June 2, 2002, the date of the termination letter.
 {¶ 8} Plaintiff now appeals and assigns three errors for our review.
 {¶ 9} Plaintiff's first assignment of error states:
 {¶ 10} "The court improperly granted Defendants' Motion for Summary Judgment in that issues of material fact existed for the jury determination as to the expiration of the Plaintiff's statute of limitations."
 {¶ 11} With regard to procedure, we note that we employ a de novo review in determining whether summary judgment was properly granted.Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336,671 N.E.2d 241; Zemcik v. La Pine Truck Sales Equip. Co. (1997),124 Ohio App.3d 581, 585, 706 N.E.2d 860.
 {¶ 12} Before summary judgment may be granted, a court must determine that "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion and, viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." Civ.R. 56(C); State ex rel. Dussell v. Lakewood Police Dept.,99 Ohio St.3d 299, 300-01, 2003-Ohio-3652, 791 N.E.2d 456, citing Stateex rel. Duganitz v. Ohio Adult Parole Auth., 77 Ohio St.3d 190, 191,1996-Ohio-326, 672 N.E.2d 654. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Zivich v.Mentor Soccer Club, 82 Ohio St.3d 367, 369-70, 1998-Ohio-389,696 N.E.2d 201.
 {¶ 13} With regard to the limitations period, we note that R.C.2305.11(A) governs time limitations for legal malpractice actions and provides that such an action must be brought within one year from the time the cause of action accrues. The Ohio Supreme Court held in Zimmie v.Calfee, Halter Griswold (1989), 43 Ohio St.3d 54, 538 N.E.2d 398, at syllabus:
 {¶ 14} "Under 2305.11 (A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later."
 {¶ 15} A "cognizable event" is sufficient to put a reasonable person on notice that, in the course of the legal representation, his attorney committed an improper act. Spencer v. McGill (1993), 87 Ohio App.3d 267,622 N.E.2d 7. To ascertain the cognizable event, "the focus should be on what the client was aware of and not an extrinsic judicial determination." Vagianos v. Halpern (Dec. 14, 2000), Cuyahoga App. No. 76408, citing, McDad v. Spencer (1991), 75 Ohio App.3d 639,600 N.E.2d 371. Further, the client need not be aware of the full extent of the injury before there is a cognizable event." Zimmie, supra.
 {¶ 16} In this matter, Plaintiff was "on notice of a need to pursue his possible remedies against the [Defendants]" when he consulted another attorney regarding his case. Id. In the last week of May, 2002, Plaintiff consulted with attorney Steven Slive regarding his disapproval with the Defendants' representation in his legal separation case. The consultation of another attorney to handle the matter itself constitutes a cognizable event. Crystal v. Wilsman (2003), 151 Ohio App.3d 512; Erickson v.Misny (May 9, 1996), Cuyahoga App No. 69213; Burris v. Romaker (1991),71 Ohio App.3d 772. Thus, a cognizable event occurred when Plaintiff consulted attorney Slive regarding his discontentment with the outcome his legal separation.
 {¶ 17} Plaintiff's argument that he did not discover the malpractice until his new counsel had an opportunity to review the file contents of the legal separation is flawed. As we have previously stated: "An injured person need not be aware of the full extent of the injury before there is a `cognizable event' triggering the statute of limitations. `Instead, it is enough that some noteworthy event, the cognizable event, has occurred which does or should alert a reasonable person' that a wrong has taken place." Lynch v. Dial Finance Co. of Ohio No. 1 (1995),101 Ohio App.3d 742, 656 N.E.2d 714, citing, Zimmie, supra. It is undisputed that Plaintiff was greatly dissatisfied with the outcome of the legal separation. This dissatisfaction, coupled with his consultation with another attorney, would necessarily put a reasonable person on notice that a wrong had taken place. Consequently, a cognizable event occurred the last week of May of 2002 when the Plaintiff consulted another attorney and hired him to replace the Defendants.
 {¶ 18} Furthermore, a statute of limitations for a malpractice claim begins to toll when the attorney-client relationship for that particular transaction terminates. For purposes of the statute of limitations, an attorney-client relationship is consensual in nature and the actions of either party that dissolve the essential mutual confidence between attorney and client signal the termination of the relationship. Brown v.Johnstone (1982), 5 Ohio App.3d 165, 166-67, 450 N.E.2d 693. A trial court can only grant summary judgment on this basis when reasonable minds can conclude that the relationship was clearly and unambiguously terminated. Mastran v. Marks (Mar. 28, 1990), Summit App. No. 14270. A letter from an attorney to a client or vice versa can unequivocally terminate the attorney-client relationship. See Hobbs v. Enz (June 28, 1996), Franklin App. No. 96APE02-135; Chapman v. Basinger (1991),71 Ohio App.3d 5, 592 N.E.2d 908.
 {¶ 19} We find that the Plaintiff's June 2, 2002 letter to the Defendants clearly and unambiguously manifests his intent to terminate the attorney-client relationship and, therefore, constitutes a cognizable event that causes the limitations period to begin to run. It is irrelevant that Plaintiff delivered the letter to Defendant and retrieved his file contents from the Defendant after June 2, 2002. As the trial court correctly determined, it is the date the letter was drafted which determines the cognizable event. It is equally irrelevant that Defendants failed to file a notice of withdrawal from the case. In Erickson v.Misny (May 9, 1996), Cuyahoga App No. 69213, we rejected this very argument and held that in a statute of limitations context, the conduct of an attorney can terminate an attorney-client relationship prior to the filing of the notice of withdrawal. On June 2, 2002, Plaintiff intended to discontinue his attorney-client relationship with the Defendants and it was this date when Plaintiff undeniably was aware of the conduct he now alleges constitutes malpractice.
 {¶ 20} We, therefore, conclude that the cognizable event occurred, at the latest, on or before June 2, 2002 and triggered the running of the statute of limitations. Accordingly, because the filing of Plaintiff's complaint on June 5, 2002 was more than one year after the claim for legal malpractice accrued (June 2, 2002), the trial court did not err in granting summary judgment for the Defendants based on the statute of limitations.
Judgment Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., J., and Sweeney, J., concur.