DECISION AND JUDGMENT ENTRY
{¶ 1} This is an accelerated appeal from a judgment of the Lucas County Court of Common Pleas which granted the summary judgment motion of defendant-appellee, James D. Caruso, and thereby dismissed the legal malpractice action filed against him by plaintiff-appellant, Linda S. Cook. Cook now challenges that judgment through the following assignments of error:
 {¶ 2} "1. The trial court erred in assuming that the plaintiff has [sic] suspicions of substandard activity by the defendant as her counsel on June 6, 2003 neglecting to consider that actions on June 6, 2003 were for reasons other than suspicions of substandard representation.
 {¶ 3} "2. The court erred in determining that plaintiff's consultation with another attorney to obtain counsel to file a petition for reinstatement, when the defendant would not file the petition, constituted a cognizable event. The lower court failed to recognize that the plaintiff was left with no other remedy than to consult with other counsel if she wished to proceed.
 {¶ 4} "3. The court erred in disregarding the nature of an ongoing case and determined that the defendant discontinued representing the plaintiff when she wrote a termination letter on June 6, 2003, which he received sometime thereafter, rather than when the defendant signed a substitution of attorneys on June 20, 2003.
 {¶ 5} "4. The court erred in determining, under the circumstances of this case, that the `cognizable event' was the termination letter of June 6, 2003 rather than the delivery of the case files to the plaintiff on June 20, 2003 the examination of which allowed her to determine the substandard actions of the defendant."
 {¶ 6} This case requires us to determine whether Cook filed a legal malpractice action against Caruso within the applicable statute of limitations. The facts underlying this case and preceding the filing of the malpractice action were set forth by the Supreme Court of Ohio in Toledo Bar Assn. v. Cook,97 Ohio St.3d 225, 2002-Ohio-5787, and need not be repeated here.
 {¶ 7} The following facts, however, are relevant to our discussion. On June 11, 2001, the Toledo Bar Association filed a complaint against Cook charging her with violations of the Code of Professional Responsibility in her representation of a client and preparation of the client's will. Cook hired Caruso to represent her in the disciplinary proceedings. Initially, a panel of the Board of Commissioners on Grievances and Discipline found that Cook violated DR 5-101(A)(2), based on the parties' stipulations, Cook's testimony and exhibits. The panel recommended a six month suspension with the entire six months stayed and a two year probationary period along with conditions.Toledo Bar Assn., supra at ¶ 7-9. The Board, however, rejected the panel's recommendation and recommended a two-year suspension with one year stayed on conditions. Ultimately, the Supreme Court of Ohio suspended Cook from the practice of law in Ohio for one year, with six months stayed, on conditions that she complete continuing legal education classes. Id. at ¶ 13.
 {¶ 8} When her period of suspension was about to expire, Cook discussed with Caruso the filing of a petition for reinstatement. Caruso testified in a deposition submitted to the lower court, that he never refused to file the petition but did tell Cook that he was concerned about the success of such a petition because there were then pending six or seven allegations that Cook had engaged in the unauthorized practice of law during the period of her suspension. Cook countered in an affidavit that Caruso would not petition the Supreme Court of Ohio for her reinstatement despite the fact that she had served the term of her suspension and was otherwise qualified for reinstatement. In her deposition, however, Cook admitted that Caruso did not refuse to file the reinstatement petition. Nevertheless, Cook consulted with another attorney to pursue reinstatement, and on June 6, 2003, Cook faxed a letter to Caruso terminating his employment. That letter reads in relevant part:
 {¶ 9} "Please be advised that I have decided to retain other counsel to represent me in the reinstatement of my license and on any grievances that are or may be pending. Therefore, I am terminating your services effective immediately.
 {¶ 10} "Please send me a complete copy of my file and a status report on all outstanding issues. I would appreciate that information within one week."
 {¶ 11} On June 20, 2003, a Sharon Trevino, on behalf of Cook, picked up Cook's file from Caruso's office along with the status letter that Cook requested.
 {¶ 12} On June 18, 2004, Cook filed an action against Caruso in the court below alleging that Caruso was negligent in his representation of her in the disciplinary proceedings. Caruso responded with a motion for summary judgment in which he asserted that Cook's complaint had been filed outside of the applicable statute of limitations and, as such, the action was time barred. Caruso's motion was supported by deposition testimony and numerous exhibits. Cook responded with a memorandum in opposition and additional evidence. On June 3, 2005, the lower court issued an opinion and judgment entry granting Caruso's summary judgment motion and dismissing the complaint. It is from that judgment that Cook now appeals.
 {¶ 13} Because the assignments of error all challenge various aspects of the lower court's order granting summary judgment, they will be discussed together. Appellate review of a trial court's grant of summary judgment is de novo. Grafton v. OhioEdison Co. (1996), 77 Ohio St.3d 102, 105. Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Harlessv. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C).
 {¶ 14} An action for legal malpractice must be commenced within one year after the cause of action accrues. R.C.2305.11(A). The question of when a cause of action for legal malpractice accrues is a question of law reviewed de novo by an appellate court. Whitaker v. Kear (1997), 123 Ohio App.3d 413,420. "[A]n action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later." Zimmie v. Calfee, Halter Griswold (1989),43 Ohio St.3d 54, syllabus. A "cognizable event" is an event that puts a reasonable person on notice that "a questionable legal practice may have occurred." Id. at 58. An injured person, however, need not "be aware of the full extent of the injury before there is a cognizable event. Instead, it is enough that some noteworthy event, the cognizable event, has occurred which does or should alert a reasonable person" that her attorney may have committed legal malpractice. Id.
 {¶ 15} The trial court found that the cognizable event occurred by at least June 6, 2003, when Cook had suspicions that Caruso's representation was inadequate. The record supports this conclusion. At her deposition, Cook testified as follows:
 {¶ 16} "Q. Why did you terminate Mr. Caruso as of June 6th of '03?
 {¶ 17} "A. Because he told me that I could not get my license back as long as I had a grievance pending. And I had the discussion with my attorneys because it didn't, you know — the way the bar is, this could go on for three years, I could be without a license. And my attorney told me that that didn't seem right because he agreed with me that a grievance is an allegation not a finding of improper fact, and he was willing to look into that for me and he couldn't do that as long as I was represented by other counsel.
 {¶ 18} "Q. Did you have a conversation with Mr. Caruso in advance of sending him that letter?
 {¶ 19} "A. No.
 {¶ 20} "Q. So is it fair for me to state that as of June 6 of '03, at least as of June 6th of '03, you didn't feel Mr. Caruso adequately represented you relative to the Ohio matter?
 {¶ 21} "A. That's correct — actually, I shouldn't say — I really don't' know that. We found out afterward, I believe, that what he told me was not true. I had suspicions at that point.
 {¶ 22} "Q. By June 6th of '03 you had suspicions that his representation of you wasn't adequate —
 {¶ 23} "A. Right.
 {¶ 24} "Q. — or was sort of substandard?
 {¶ 25} "A. Yes."
 {¶ 26} Cook asserts that she did not know that she had a claim for malpractice against Caruso until shortly after June 20, 2003, when she had an opportunity to review her case file. As is clear from her deposition testimony, however, in discussions with her Michigan attorneys (whom she hired to represent her in a reciprocal disciplinary matter), Cook was put on notice that Caruso may have engaged in questionable legal practices. These discussions with her Michigan attorneys necessarily predated the June 6, 2003, letter to Caruso. Accordingly, it is without dispute that the "cognizable event" for purposes of the statute of limitations was no later than June 6, 2003.
 {¶ 27} Our inquiry, however, does not end there, for we must also determine the date on which the attorney-client relationship between Caruso and Cook terminated. Although determination of when the attorney-client relationship for a particular transaction terminates is generally a question of fact,Omni-Food Fashion, Inc. v. Smith (1988), 38 Ohio St.3d 385,388, where the evidence is clear and unambiguous, so that reasonable minds can come to but one conclusion from it, the matter may be decided as a matter of law. See Koerber v. Levey Gruhin, 9th Dist. No. 21730, 2004-Ohio-3085, at ¶ 19. Because an attorney-client relationship is consensual in nature, the actions of either party to the relationship can affect its continuance.Brown v. Johnstone (1982), 5 Ohio App.3d 165, 167. "[C]onduct which dissolves the essential mutual confidence between attorney and client signals that termination of the professional relationship." Id. at 166.
 {¶ 28} It is undisputed that on June 6, 2003, Cook faxed Caruso a letter in which she clearly and unequivocally terminated his services as her attorney in the disciplinary proceedings, "effective immediately." Indeed, Cook specifically notified Caruso that she had decided to retain other counsel to represent her in the reinstatement of her license and on any pending grievances. That Caruso subsequently provided Cook with a status report is inconsequential in that Cook expressly requested the report when she terminated Caruso. See Chambers v. Melling,Harding, Schuman and Montello, 8th Dist. No. 85045,2005-Ohio-2456. Finally, the fact that a substitution of counsel was not filed with the Supreme Court until June 20, 2003, does not establish that Caruso continued to represent Cook. Although Caruso signed the form acknowledging and agreeing to the substitution, Cook's new counsel, not Caruso, filed that substitution as her counsel. This is not a case in which, despite being terminated, the attorney continued to represent the client and act on her behalf. See Monastra v. D'Amore (1996),111 Ohio App.3d 296.
 {¶ 29} Given the above, it cannot be disputed that the attorney-client relationship between Caruso and Cook terminated on June 6, 2003. Cook, however, did not file her complaint against Caruso until June 18, 2004, 12 days after the statute of limitations expired. Accordingly, Cook's malpractice action against Caruso was time barred and the trial court did not err in granting Caruso summary judgment. The four assignments of error are not well-taken.
 {¶ 30} On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J. Pietrykowski, J. Skow, J. concur.