[Cite as *McOwen v. Zena*, 2012-Ohio-4568.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| BARBARA McOWEN, | ) | |
| | ) | CASE NO. 11 MA 58 |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| THOMAS E. ZENA, | ) | |
| | **)** | |
| DEFENDANT-APPELLEE. | ) | |


CHARACTER OF PROCEEDINGS:    Civil Appeal from Common Pleas
Court, Case No. 09 CV 3019.


JUDGMENT:                                    Reversed and Remanded.


APPEARANCES:
For Plaintiff-Appellant:                    Attorney Stephen Hanudel
                                                      326 North Court Street
                                                      Medina, OH 44256


For Defendant-Appellee:                 Attorney Douglas Taylor
                                                      11492 Youngstown-Pittsburgh Rd.
                                                      New Middletown, OH 44442

                                                      Attorney John Juhasz
                                                      7081 West Blvd., Suite 4
                                                      Youngstown, OH 44512


JUDGES:
Hon. Mary DeGenaro
Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich


                                                      Dated: September 27, 2012

DeGenaro, J.

{¶1} Plaintiff-Appellant, Barbara McOwen, appeals the February 10, 2011 decision of the Mahoning County Court of Common Pleas granting Defendant-Appellee's, Thomas E. Zena, motion to dismiss her legal malpractice complaint. On appeal, McOwen argues that the trial court erred in its determination of the termination date of the attorney-client relationship and the date of the cognizable event. She alleges that she timely filed her complaint for legal malpractice within the one-year statute of limitations.

{¶2} McOwen's arguments are meritorious. Construing the evidence in McOwen's favor, she has pled facts sufficient to survive dismissal pursuant to Civ.R. 12(B)(6). She alleged she filed her complaint within one year of the unequivocal termination of the attorney-client relationship on August 11, 2008 and/or within one year of the cognizable event, namely, learning on August 13, 2008 that her case had been dismissed, either of which results in the malpractice suit having been timely filed. Accordingly, the judgment of the trial court is reversed and the case remanded for further proceedings.

## Facts and Procedural History

{¶3} McOwen contracted with Dragan Milentijevic, a general contractor, for the construction of her home. When she became dissatisfied with Milentijevic's work, she retained Zena in October 2003 to represent her regarding claims against Milentijevic. On August 10, 2009, McOwen filed a complaint for legal malpractice against Zena, which was amended with leave of court on December 30, 2009. The following facts are taken from the complaint and amended complaint:

{¶4} On February 10, 2004, Zena filed suit against Milentijevic on behalf of appellant for $200,000 in compensatory damages and $150,000 in punitive damages. Milentijevic filed a counterclaim and served a request for production of documents; Zena failed to respond to both. McOwen regularly consulted Zena on the status of her case and he assured her it was proceeding properly. On March 7, 2005, Milentijevic filed a motion for default judgment on his counterclaim in an amount exceeding $315,000. On that same date, he also filed a motion for sanctions to prohibit McOwen from introducing evidence. Zena failed to respond to either motion, and on June 23, 2005, the trial court entered default judgment on the counterclaim and granted the motion for sanctions.

**{¶5}** McOwen was served with Milentijevic's motion for default judgment. Upon receiving this motion, she asked Zena about it; he told her not to worry and that the motion would be "easily disposed of."

**{¶6}** On June 23, 2005, Zena filed a voluntary dismissal of McOwen's case pursuant to Civ.R. 41(A) without her consent or knowledge. Zena never informed McOwen of the dismissal. For the next three years, McOwen regularly consulted with Zena on the status of her case, and he repeatedly told her that her case was proceeding properly and was still active. According to McOwen, Zena told her about "specific court hearings, dates, depositions, continuances, and other related items that never existed."

**{¶7}** Around spring or summer 2008, McOwen became dissatisfied with the lack of progress in her case. On July 25, 2008, McOwen sent a letter informing Zena that she intended to dismiss him as her attorney and requested her file be available for pick up on July 31, 2008. On that date, McOwen went to Zena's office but was told her file was not available.

**{¶8}** On August 4, 2008, Zena filed a complaint on McOwen's behalf against Adam & Eve Plumbing & Drain, Inc., a subcontractor who worked under Milentijevic on the construction of McOwen's home. Zena filed this complaint without McOwen's consent and without consulting her.

**{¶9}** On August 11, 2008, McOwen wrote another letter to Zena, this time informing him of her decision to dismiss him as her attorney and requesting that her file be available for pickup. On August 13, 2008, McOwen learned that Zena had dismissed her case against Milentijevic in June 2005. On August 14, 2008, McOwen obtained her file from Zena's office.

**{¶10}** In her complaint and amended complaint, McOwen alleged that Zena's negligent misconduct breached the standard of care he owed her as her attorney. She claimed that as a direct and proximate result of this breach, she lost the opportunity to recover $200,000 from Milentijevic and a default judgment in excess of $315,000 was awarded against her. McOwen requested judgment against Zena for an amount in excess of $500,000 plus pre- and post-judgment interest, costs, attorney fees, and any

further relief she may be entitled to in law or equity.

{¶11} On December 16, 2009, Zena, with leave of court, filed a motion to dismiss the action pursuant to Civ.R. 12(B)(6) for failure to state a claim upon which relief can be granted. He argued that McOwen's complaint was barred by the statute of limitations and should be dismissed. McOwen opposed Zena's motion to dismiss on December 28, 2009. On January 5, 2010, Zena filed a reply to McOwen's response in opposition to his motion to dismiss. On January 19, 2010, McOwen filed a response to Zena's reply.

{¶12} On August 5, 2010, the magistrate issued a decision sustaining Zena's motion to dismiss the complaint and amended complaint. The magistrate found that a cause of action for legal malpractice must be brought within one year after the cause of action accrues. The cause of action begins accruing upon either the termination of the attorney-client relationship or when the client discovered or should have discovered the injury, whichever date is later. The magistrate further found that McOwen discovered or should have discovered the alleged injury long before she terminated her attorney-client relationship with Zena on July 25, 2008. The magistrate concluded that the cause of action accrued on July 25, 2008 and McOwen filed her complaint on August 10, 2009, outside of the one-year statute of limitations. The magistrate did not state the date McOwen discovered or should have discovered her injury.

{¶13} On August 17, 2010, McOwen filed objections to the magistrate's decision. On September 27, 2010, Zena, with leave of the court, filed a reply to McOwen's objections, and on October 12, 2010, McOwen filed a sur-reply. On February 10, 2011, the trial court issued a judgment entry overruling McOwen's objections and adopting the magistrate's decision, thereby sustaining Zena's motion to dismiss the complaint and amended complaint.

### Legal Malpractice – Statute of Limitations

{¶14} McOwen asserts two assignments of error on appeal. Because these arguments are interrelated, they will be addressed together:

{¶15} "The trial court erred when it found that the attorney-client relationship terminated on July 25, 2008."

{¶16}  "The trial court erred when it found that Appellant should have known about her injury before she terminated the attorney-client relationship."

{¶17}  "A motion to dismiss based upon a statute of limitations may be granted when the complaint shows conclusively on its face that the action is time-barred." *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, 849 N.E.2d 268, ¶ 11. An appellate court reviews a trial court's decision to dismiss a case pursuant to Civ.R. 12(B)(6) de novo.  *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5.  In conducting the de novo review, this court must presume all factual allegations contained in the complaint to be true and make all reasonable inferences in favor of the nonmoving party.  *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988).

{¶18}  R.C. 2305.11(A) provides that an action for legal malpractice "shall be commenced within one year after the cause of action accrued * * *."  The Ohio Supreme Court has instructed courts to identify two dates to determine when the action accrues and the statute of limitations begins to run:

> [W]hen there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later. *Zimmie v. Calfee, Halter and Griswold*, 43 Ohio St.3d 54, 538 N.E.2d 398 (1989), at syllabus, applying *Omni-Food & Fashion, Inc. v. Smith*, 38 Ohio St.3d 385, 528 N.E.2d 941 (1988).

{¶19}  McOwen first contends that the trial court erred when it determined that the date the attorney-client relationship terminated was July 25, 2008.

{¶20}  "Generally, the attorney-client relationship is consensual, subject to termination by acts of either party."  *Ruckman v. Zacks Law Group LLC*, 10th Dist. No. 07AP-723, 2008-Ohio-1108, ¶ 18, quoting *Columbus Credit Co. v. Evans*, 82 Ohio App.3d

798, 804, 613 N.E.2d 671 (10th Dist. 1992). "Conduct which dissolves the essential mutual confidence between attorney and client signals the termination of the attorney-client relationship, an explicit statement terminating the relationship is not necessary." *Harman v. Wise*, 7th Dist. No. 00 CA 50, 2001-Ohio-3489. A letter stating that the representation has terminated can be an affirmative act that terminates the relationship. *Savage v. Kucharski*, 11th Dist. No. 2005-L-141, 2006-Ohio-5165, ¶ 23.

{¶21} McOwen specifically claims that although she wrote Zena a letter on July 25, 2008 expressing *her intent* to terminate the attorney-client relationship, this letter did not end the attorney-client relationship because Zena subsequently filed a complaint on her behalf against Adam & Eve, a subcontractor who worked for Milentijevic in constructing her home. She alleges that Zena's representation of her was not a general practice relationship and that he represented her regarding the construction of her home; therefore, Zena filing the complaint against the subcontractor extended the attorney-client relationship. McOwen claims that this relationship did not terminate until she sent the second letter to Zena on August 11, 2008.

{¶22} Construing the facts alleged in the complaint in the light most favorable to McOwen as we are required to do so by Civ.R. 12(B)(6), the July 25, 2008 letter was not an unequivocal termination of the attorney-client relationship contemplated by Ohio case law. Rather, it was expressing McOwen's *intent* to do so, putting Zena on notice of McOwen's dissatisfaction with his representation, and affording him the opportunity to cure that dissatisfaction. This is born out by Zena's act of filing a complaint against Adam & Eve.

{¶23} The Second District found that an attorney's communications with his client were not the termination date for statute of limitations purposes because they did not show "an unequivocal intent" to terminate the relationship:

> We agree with the trial court that McKinney's communications to Daniel * * *
> do not show an unequivocal intent to terminate the attorney-client
> relationship. At most, they indicate that McKinney had concluded that the

contemplated appeal to the Supreme Court of Ohio was insupportable, so that he could not, consistently with the standards of professional conduct, file an appeal. But the communications also show that McKinney was continuing to represent Daniel with respect to the proceedings in the trial court, which were ongoing, despite the fact that the decree of divorce had become final. For example, McKinney, in his letter of March 16, 2006, discusses strategy for the show-cause hearing scheduled for April 14, and also undertakes to inquire concerning possible settlement, should Daniel wish him to do so. This is inconsistent with a termination of McKinney's representation with respect to the divorce. *Daniel v. McKinney*, 181 Ohio App.3d 1, 2009-Ohio-690, 907 N.E.2d 787, ¶ 47.

**{¶24}** However, for Civ.R. 12(B)(6) purposes, as pled in the complaint, McOwen's August 11, 2008 letter did inform Zena of her unequivocal decision "to dismiss him as her attorney". Other Ohio courts have found that similar letters between clients and attorneys have signaled the end of the attorney-client relationship. *See Duvall v. Manning*, 11th Dist. No. 2010–L–069, 2011-Ohio-2587, ¶ 11, 29 (letter from attorney to client stating "I am terminating this relationship effective immediately" constituted termination of relationship); *Cook v. Caruso,* 6th Dist. No. L-05-1208, 2006-Ohio-1982, ¶ 9, 28 (letter informing attorney that client decided to retain other counsel and was terminating the attorney's services effective immediately  was an unequivocal termination of the relationship). Here, the "essential mutual confidence between attorney and client" was dissolved by the August 11, 2008 letter. *Harman* at *3. Construing the allegations in the complaint in the light most favorable to McOwen, the August 11, 2008 letter was the unequivocal termination of the attorney-client relationship for statute of limitations purposes, sufficient to survive Civ.R. 12(B)(6) dismissal.

**{¶25}** McOwen alternatively argues that the trial court erred in finding that she discovered or should have discovered her injury long before she terminated the attorney-client relationship.

{¶26} This court has previously explained the concept of a "cognizable event" within the statute of limitations for legal malpractice:

A "cognizable event" is an event that puts a reasonable person on notice that "a questionable legal practice may have occurred." *Cook v. Caruso*, 6th Dist. No. L-05-1208, 2006-Ohio-1982, ¶ 14, citing *Zimmie*, 43 Ohio St.3d 54. However, an injured person does not need to "be aware of the full extent of the injury before there is a cognizable event." *Cook*, 2006-Ohio-1982 at ¶ 14, citing *Zimmie*, 43 Ohio St.3d 54. Rather, it is enough that some noteworthy event, i.e. the cognizable event, has occurred which does or should have alerted a reasonable person that his attorney may have committed legal malpractice. *Cook*, 2006-Ohio-1982 at ¶ 4, citing *Zimmie*, 43 Ohio St.3d 54. "Knowledge of a potential problem starts the statute to run, even when one does not know all the details." *Halliwell v. Bruner* (Dec. 14, 2000), 8th Dist. Nos. 76933, 77487. *Lincoln Gen. Ins. Co. v. Pipino*, 7th Dist. No. 06 MA 125, 2007-Ohio-5046, ¶ 21.

{¶27} McOwen first claims that she was not actually injured until June 23, 2006, one year after Zena filed the Civ.R. 41(A) voluntary dismissal of her lawsuit. She thus contends that any event before that date cannot be considered as a cognizable event. However, "[t]he Ohio Supreme Court has never held that a party must be aware or suffer the full extent of his injury before there is a cognizable event triggering the statute of limitations in a legal malpractice action." *Griggs v. Bookwalter*, 2d Dist. No. 21220, 2006-Ohio-5392, ¶ 20. McOwen alleged in her complaint that she was injured by the default judgment entered against her on June 23, 2005. The complaint also alleges that Zena negligently failed to respond to Milentijevic's pleadings during the course of litigation. While McOwen may not have suffered the full extent of her injury until June 23, 2006, this does not preclude a finding of a cognizable event before that date.

{¶28} Zena claims that McOwen's receipt of the motion for default judgment was a cognizable event that should have put her on notice of the wrong. McOwen argues that

the motion did not put her on notice of questionable legal practices because of Zena's representations to her. Specifically, that she regularly consulted with Zena regarding the status of her case and that he misrepresented to her that the case was proceeding properly. She notes that she received a copy of Milentijevic's default judgment motion in March 2005 and when she contacted Zena, he told her not to worry about this motion. Thus, she alleges that Zena's misrepresentation should toll the statute of limitations based on equitable estoppel.

{¶29} To determine whether McOwen should have been put on notice, we use an objective standard to evaluate whether McOwen should have discovered the alleged malpractice in the exercise of reasonable diligence. "Reasonable diligence thus entails some effort by the client to dispel his confusion, doubt, or suspicion." *Woodrow v. Heintschel*, 194 Ohio App.3d 391, 2011-Ohio-1840, 956 N.E.2d 855, ¶ 41 (6th Dist.).

{¶30} Based on the allegations in the complaint, McOwen had no reason to suspect any questionable legal practices after receiving the motion for default judgment. Upon receipt of the motion, McOwen alleges that she did consult with Zena and he assured her that he would take care of the motion. This was a reasonable effort to address her concern regarding the default judgment motion, especially considering her allegations that Zena told her about court hearings and depositions scheduled after that date. Thus, McOwen's reliance on Zena's representations was reasonable, and she had no other reason to suspect any wrongdoing.

{¶31} As the procedural posture of this appeal is the dismissal via Civ.R. 12(B)(6), we must make all reasonable inferences in McOwen's favor. Given the allegations in McOwen's amended complaint, she did not have any reason to know of the default judgment; it alleges that Zena never informed McOwen that default judgment was entered, that he voluntarily dismissed her case and failed to refile, and that he misrepresented the status of her case for the next three years. He also refused to hand over her file as requested. Taking these allegations as true, one could conclude that no cognizable event occurred during this time to put McOwen on notice of the alleged malpractice.

{¶32} McOwen claims that she became dissatisfied with the lack of progress in her case around spring or summer 2008. Courts have considered a client's dissatisfaction with his or her attorney in determining whether a cognizable event occurred. *See, e.g., Griggs* at ¶ 22. Here, Zena told McOwen that her case was proceeding properly, specifically telling her about court hearings, depositions, and continuances. Thus, it was reasonable that McOwen would not have known that the lack of progress was related to Zena's malpractice.

{¶33} Construing the allegations in the complaint in her favor, the earliest date that McOwen should have been aware of her injury was August 13, 2008, when she alleges that she learned her case had been dismissed by Zena. Because McOwen filed her complaint on August 10, 2009, less than one year later, the trial court erred in dismissing her complaint as barred by the statute of limitations.

{¶34} In sum, McOwen's arguments are meritorious. The trial court erred in its determination of the date the attorney-client relationship terminated and the date of the cognizable event. Construing the evidence in McOwen's favor, she pled facts sufficient to survive dismissal that she terminated the attorney-client relationship on August 11, 2008 and that the cognizable event occurred on August 13, 2008, when she learned that her case had been dismissed. Because McOwen filed her malpractice action within one year of the last triggering event, the legal malpractice complaint is timely on its face. Accordingly, the judgment of the trial court is reversed and the case remanded for further proceedings.

Waite, P.J., concurs.
Vukovich, J., concurs.